UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF WISCONSIN

LJ LEFLORE,

                Plaintiff,

                                      Case No. 2014-CV-0153

     v.

GREEN TREE SERVICING LLC,

                Defendant.

**GREEN TREE SERVICING LLC'S COMBINED BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

Even before a fire destroyed Plaintiff L.J. LeFlore's rental property, he was behind on his real estate taxes. Then, when the insurance funds were insufficient to pay off his mortgage, he stopped making monthly payments altogether. LeFlore's failure to cure these defaults was not his biggest problem, nor his only problem for that matter. When the City of Milwaukee (the "City") entered an order to raze the rental property, LeFlore failed to take action. Although he claims to have obtained a quote for demolition services, LeFlore never razed the property. Instead, months later, the City was forced to deal with LeFlore's inaction and, consequently, razed the property pursuant to an emergency order. While the City received some reimbursement from LeFlore's hazard insurance, the balance was assessed on LeFlore's tax bill. First, Bank of America, and later Green Tree Servicing LLC ("Green Tree") advanced yet even more monies to pay these tax assessments. As a result, the outstanding balance on LeFlore's mortgage loan continued to rise.

LeFlore never paid off his mortgage loan.  Rather, he has sued Green Tree alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), Telephone Consumer Protection Act ("TCPA"), and Wisconsin's slander of title statute.  Lacking any shred of evidence, LeFlore argues that the insurance proceeds should have paid off his entire indebtedness under the note and mortgage, even though LeFlore's prior loan servicer initially advised him back in 2011 that this was not the case.  As such, each of LeFlore's claims is based on the false premise that the insurance proceeds should have paid off his loan.  In an effort to settle this dispute, Green Tree retroactively applied the insurance funds to LeFlore's loan account as of the date that the prior servicer received his initial payoff request.  Green Tree then wrote off the remaining $17,928.50 balance on the mortgage loan and provided LeFlore with a satisfaction of mortgage. Nevertheless, LeFlore continues to pursue his baseless claims.

In addition to lacking merit on his substantive claims, LeFlore's summary judgment motion papers demonstrate that he will never be able to prove that he is entitled to relief on any of his claims.  In contrast, however, Green Tree offers uncontroverted admissible evidence that its collection efforts complied with applicable law.  For these reasons, Green Tree: (i) opposes LeFlore's motion for summary judgment; and (ii) files this cross-motion for summary judgment, requesting this Court grant judgment in its favor and dismiss LeFlore's claims with prejudice and on the merits.

## STATEMENT OF FACTS

### Mortgage Loan

On May 8, 2009, LJ LeFlore executed a fixed-rate Note in the principal amount of $52,000 with Bank of America, N.A.  (Def.'s Resps. to Pl.'s Proposed Statement of Material Facts and Def.'s Addt'l Proposed Statement of Material Facts ("DPSOF") ¶ 36.)  The Note was

secured by a Mortgage dated May 8, 2009, on a two-family rental property located at 3024 N

28th Street, Milwaukee, Wisconsin (the "rental property"), which was duly recorded as

Document No. 09749456 on June 8, 2009 in the Office of the Register of Deeds for Milwaukee

County, Wisconsin (the "Register of Deeds"). (DPSOF ¶ 37.)

Bank of America subsequently endorsed the Note in blank and assigned the Mortgage to

Green Tree. (DPSOF ¶ 38.) At all relevant times, LeFlore's mortgage loan was owned by the

Federal National Mortgage Association ("Fannie Mae"). (DPSOF ¶ 39.)

**LeFlore's Tax Default**

By letter dated November 30, 2010, BAC Tax Services Corporation, on behalf of BAC

Home Loans Servicing LP, both subsidiaries of Bank of America (collectively, "Bank of

America"), advised LeFlore that it had reviewed the Tax Authority's official records and

discovered that LeFlore owed delinquent taxes on the rental property. (DPSOF ¶ 40.) The letter

warned LeFlore of the following:

> [If] delinquent property taxes owed are not paid within thirty (30) days from the
> date of this letter, BAC Home Loans Servicing, LP may (but is not required to)
> pay all delinquent taxes owed, including penalties, interest and/or fees, as well as
> any taxes due to protect your Lender's interest in the property. If BAC Home
> Loans Servicing, LP disburses funds to bring the account current with your Tax
> Authority, then it will establish an escrow/impound account at the time of the
> disbursement which will remain in effect thereafter to ensure the timely payment
> of future taxes. As a result, your monthly mortgage payment will *significantly
> increase* to reimburse any payments made by BAC Home Loans Servicing, LP as
> well as to collect for upcoming tax bills.

(DPSOF ¶¶ 41-43 (emphasis added).) Despite this notice, LeFlore failed to correct the tax

delinquency and, thus on January 25, 2011, Bank of America tendered payment to the City in the

amount of $7,643.69 on LeFlore's behalf. (DPSOF ¶ 44.) By letter of the same date, Bank of

America informed LeFlore that it had advanced funds to pay the property tax delinquencies.

(DPSOF ¶ 45.)  Because LeFlore failed to pay the tax delinquency, the escrow account on his mortgage loan turned a negative balance of $7,566.01.  (DPSOF ¶ 46.)

**Fire Destroys Rental Property**

A fire destroyed the rental property on or about February 17, 2011.  (DPSOF ¶ 47.)  On the same date, LeFlore's hazard insurance carrier, Meritplan Insurance Company ("Meritplan"), sent LeFlore a letter acknowledging receipt of his fire damage claim and informing him of the policy's $75,000 limit.  (DPSOF ¶ 48.)  However, LeFlore abruptly stopped making his monthly mortgage payments in April 2011.  (DPSOF ¶ 49.)  Then when LeFlore failed to take action to have the rental property razed, the City informed Meritplan, Bank of America, and LeFlore, by letter dated April 1, 2011, that it had commenced proceedings to obtain an order to raze the rental property and anticipated filing a claim for expenses incurred.  (DPSOF ¶ 50.)

**Application of Insurance Proceeds**

In a letter dated April 4, 2011, Meritplan provided Bank of America and LeFlore with a summary of the insurance claim payment issued for LeFlore's fire damage loss.  (DPSOF ¶ 51.)  Accompanying the letter was the first of two checks, this one made payable to Bank of America in the amount of $56,250 for the actual cash value of the estimated repairs to the rental property, less the policy deductible.  (DPSOF ¶ 52.)  Meritplan withheld $18,750 of the $75,000 policy limit as financial protection against the cost of cleanup.  (DPSOF ¶ 53.)

Because LeFlore failed to pay the 2010 real estate property taxes, the insurance funds from Meritplan were insufficient to pay off his loan balance.  (DPSOF ¶ 54.)  Fannie Mae guidelines prohibit its servicers, like Bank of America, from applying insurance funds to a borrower's unpaid principal balance when the loan is not otherwise current.  (DPSOF ¶ 55.)  Bank of America sent a Payoff Demand Statement, the first in a series of correspondences to

LeFlore regarding his loan, informing him that the payoff amount through April 13, 2011 was $58,773.44, which represented a principal balance of $50,830.39, interest in the amount of $347.04, and a negative escrow balance of $7,566.01. (DPSOF ¶ 56.) LeFlore did not tender payment to compensate for the shortage. (DPSOF ¶ 58.) Consequently, the insurance funds were not applied to the payoff amount, and a dispute arose between Bank of America and LeFlore as to whether a debt was still owed under the loan. (DPSOF ¶ 59.)

LeFlore sent a letter to Bank of America dated May 17, 2011 expressing concern regarding the insufficiency of the insurance funds to pay off his entire mortgage loan. (DPSOF ¶ 60.) By letter dated July 6, 2011, Bank of America responded, explaining to LeFlore that his account was past due for the April 2011 monthly mortgage payment, that the two checks it received from Meritplan totaling $58,166.65 were insufficient to pay off the mortgage loan in April 2011, and that, as a result of all of this, the insurance funds could not be applied to his account. (DPSOF ¶ 61.)

Meanwhile, LeFlore failed to raze the rental property, so the City razed it pursuant to an emergency raze order issued on November 23, 2011. (DPSOF ¶ 62.) On December 6, 2011, the City submitted an itemized statement of costs incurred in the demolition of the rental property to Meritplan and requested that Meritplan remit payment in the amount of $21,865.45 from the withheld funds. (DPSOF ¶ 63.) In the December 6, 2011 letter, a copy of which was also sent to LeFlore, the City explained the following:

> [any] expenses not covered by the withheld funds will be placed as a lien on the real estate and will appear as a special charge on the tax bill. In addition, the vacant lot will be referred to a contractor to be restored to a dust-free and erosion free condition. The charge resulting from this work will be assessed on the tax roll."

(DPSOF ¶ 64.)  Because Meritplan had only retained $18,750 in withheld funds, the City was not fully reimbursed.  (DPSOF ¶ 65.)

**LeFlore's Continued Default**

As a result of LeFlore's failure to cure his April 2011 default under the Note or tender the payoff shortage, Bank of America filed a complaint for foreclosure and recorded a lis pendens with the Register of Deeds in April 2012.  (DPSOF ¶ 66.)  By the end of September 2012, Bank of America and LeFlore stipulated to dismiss the case "without prejudice and with [the] right to reopen in the event a loan modification cannot be finalized."  (DPSOF ¶ 67.)  Bank of America recorded a release of lis pendens on October 5, 2012.  (DPSOF ¶ 68.)  LeFlore never entered into a loan modification agreement and Bank of America subsequently opened yet another foreclosure action and recorded a new lis pendens with the Register of Deeds in December 2012.  (DPSOF ¶ 69.)  In June and July 2013, Bank of America agreed to dismiss the foreclosure action-- again without prejudice --and recorded another release of lis pendens, respectively.  (DPSOF ¶ 70.)  Despite Bank of America's dismissal, however, LeFlore never cured his default, never entered into a loan modification agreement, and never tendered his payoff shortage.  (DPSOF ¶ 71.)

**Bank of America Transfers Servicing Rights to Green Tree**

In May 2013, Bank of America transferred the servicing of LeFlore's loan to Green Tree.  (DPSOF ¶ 72.)  Green Tree received the $58,166.65 in insurance funds from Bank of America on May 15, 2013.  (DPSOF ¶ 73.)  The insurance funds were not enough to pay off the loan, so Green Tree held the funds in a suspense account, and applied the accruing interest on the insurance funds to the unpaid principal balance starting in July 2013.  (DPSOF ¶ 74.)  As they did with Bank of America, Fannie Mae guidelines prohibited Green Tree from applying the

insurance funds to the unpaid principal balance because LeFlore's loan was not current.

(DPSOF ¶ 75.) According to the 2012 Fannie Mae Servicing Guidelines, hazard claim proceeds

may be used in only one of three ways:

> 1) Repair the collateral
> 2) Pay in Full/Reduce the UPB (unpaid principal balance) on a *current* loan
> 3) Reduce the foreclosure bid
>
> If the homeowner wishes to use the hazard claim proceeds toward the mortgage debt/upb, they should contact [the] Loss Mitigation department and discuss options to bring the loan current. Once this is completed, you may apply the hazard loss proceeds as a principle [*sic*] curtailment.

(DPSOF ¶ 76 (emphasis added).)

Included in the records Green Tree creates and maintains in the regular course of business are collection notes. (DPSOF ¶ 77.) Collection notes contain summaries of communications between Green Tree representatives and third parties regarding each mortgage loan Green Tree services. (DPSOF ¶ 78.) According to Green Tree's collection notes, at no point did LeFlore ever communicate to Green Tree that he was represented by legal counsel with respect to the loan or in connection with Green Tree's collection efforts. (DPSOF ¶ 79.) To the contrary, the collection notes reflect that LeFlore and his wife themselves contacted Green Tree on several occasions to discuss the status of his mortgage loan. (DPSOF ¶ 80.)

In addition, LeFlore never provided written notice to Green Tree that he refused to pay the debt or that Green Tree should stop communicating with him regarding the loan. (DPSOF ¶ 81.) Further, Green Tree never placed calls to LeFlore's cell phone and, as a precautionary measure, ran a "cell phone scrub" to ensure that calls did not go to a number associated with, or identified as, a cell phone. (DPSOF ¶ 83.) Finally, LeFlore never revoked consent for Green Tree to contact him on the phone number he provided Green Tree regarding the mortgage loan. (DPSOF ¶ 84.)

**LeFlore Files Suit Against Green Tree**

On February 12, 2014, LeFlore filed this action against Green Tree in the United States District Court for the Eastern District of Wisconsin, Case No. 2:14-cv-00153-RTR. (DPSOF ¶ 85.) In his complaint, LeFlore alleges federal violations of the Fair Debt Collection Practices Act ("FDCPA"), the Telephone Consumer Protection Act ("TCPA"), and violations of Wis. Stat. § 706.13, Wisconsin's slander of title statute. (DPSOF ¶ 86.) Green Tree answered the Complaint, denying LeFlore's allegations and asserting affirmative defenses, including LeFlore's failure to state a claim upon which relief can be granted, the Court's lack of supplemental jurisdiction over LeFlore's state law claim, and the doctrines of laches and/or waiver. (DPSOF ¶ 87.)

**Green Tree Records Satisfaction of Mortgage**

On July 31, 2014, while in the midst of informal settlement negotiations, Green Tree retroactively applied the insurance funds to LeFlore's outstanding balance as of April 22, 2011, the date Bank of America received the initial payoff request from LeFlore. (DPSOF ¶ 88.) Green Tree also wrote off the remaining $17,928.50 balance reflected on the mortgage loan and provided LeFlore with a Satisfaction of Mortgage. (DPSOF ¶ 89.) Although LeFlore declares under penalty of perjury that he ultimately lost the rental property as a result of a tax foreclosure sale, the public records of the Register of Deeds indicate that LeFlore actually transferred the property to a third party purchaser pursuant to a quit claim deed dated August 20, 2014. (DPSOF ¶ 90.) As of 2012, the rental property only had an assessed value of $2,500. (DPSOF ¶ 91.)

Despite receiving a satisfaction of mortgage, LeFlore continues to pursue his claims against Green Tree. (DPSOF ¶ 92.) He seeks damages in the following amounts: (i) $12,000 for

economic loss of the rental property; (ii) $50,000 for personal humiliation, embarrassment, mental anguish and exacerbating his chronic obstructive pulmonary disease ("COPD"); (iii) $1,000 for statutory penalties under the FDCPA; (iv) $1,000 for statutory penalties under Wis. Stat. § 706.13(1); and (v) all of his legal fees and costs from June 2013 to the present. (*Id.*). Now, LeFlore has moved for summary judgment on his claims. Green Tree not only responds in opposition, but moves the court for summary judgment dismissing each of LeFlore's claims with prejudice and on the merits.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "[t]here is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The mere existence of some type of factual dispute is not sufficient to overcome summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Instead, the dispute must be genuine and go directly to a material fact. *Id.* 247-48. These standards are not altered in the face of competing cross-motions for summary judgment as cross-motions must be considered separately. *McKinney v. Cadleway Props., Inc.*, 548 F.3d 496, 504 (7th Cir. 2008); *N. Shores Enter. LLC v. City of Mequon*, No. 09-C-0851, 2012 WL 589259, at *1 (E.D. Wis. Feb. 22, 2012). As such, neither party may rest on mere allegations or denials in the pleadings. *Anderson*, 477 U.S. at 248. Rather, each party must establish the absence of any genuine issue of material fact by presenting evidence that would be admissible at trial to prove or disprove the elements of the claims. *Id; see also Celotex*, 477 U.S. at 322.

## ARGUMENT

**I. GREEN TREE IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON LEFLORE'S CLAIMS UNDER THE FDCPA.**

LeFlore alleges three violations under the FDCPA. First, he claims that Green Tree contacted him directly when it knew he had an attorney from the prior foreclosure action prosecuted by Bank of America. (Compl. [dkt. 1] ¶ 22(a).) Next, he claims that Green Tree continued to contact him after repeatedly being advised that he refused to pay. (*Id.* ¶ 22(b).) Finally, he claims that Green Tree falsely represented the amount and legal status of his debt. (*Id.* ¶ 22(c).) LeFlore simply has no evidence to prove any of these alleged violations.

### A. LeFlore cannot demonstrate that Green Tree communicated directly with him despite knowing he was represented by legal counsel.

LeFlore alleges in his Complaint that Green Tree violated the FDCPA by "[c]ontacting [him] directly when [it] knew he had an attorney from the prior lawsuit" in violation of § 1692c(a)(2). (*Id.* ¶ 22 at 4.) But in his summary judgment motion, he completely fails to develop any argument, factual or legal, that either he was represented by counsel when Green Tree began contacting him about his delinquency, or that Green Tree continued contacting him despite knowing he was represented by counsel.

Under § 1692c(a)(2) of the FDCPA, a debt collector "[m]ay not communicate with a consumer in connection with the collection of any debt . . . if the debt collector knows the consumer is represented by an attorney with respect to such debt[.]" 15 U.S.C. § 1692c(a)(2). To prove a violation under § 1692c(a)(2), the plaintiff must show (i) that the defendant had actual knowledge that the plaintiff was represented by counsel and (ii) that the defendant continued to contact the plaintiff despite knowing of this representation. *See Eisberner v. Weltman, Weignberg & Reis Co.*, L.P.A., No. 13-C-1148, 2014 WL 4064026, at *5 (E.D. Wis. Aug. 14,

2014) (granting summary judgment in favor of the defendant because a reasonable factfinder could not conclude the defendant had actual knowledge that the plaintiff was represented by an attorney in connection with the debt at issue); *also Berndt v. Fairfield Resorts, Inc.*, 337 F. Supp. 2d 1120, 1132 (W.D. Wis. 2004) (finding that no FDCPA violation occurred because there was no evidence that the defendant would have known that plaintiffs had legal representation).

As a preliminary matter, whether LeFlore was represented by counsel in the prior foreclosure actions has no bearing on whether Green Tree had actual knowledge that he was being represented in connection with its collection efforts. *See Berndt*, 337 F. Supp. 2d at 1133.[1] And although there was a modest one month overlap between the times Green Tree acquired the servicing rights and Bank of America dismissed the foreclosure action, LeFlore presents no evidence that Green Tree actually knew he was represented by legal counsel with respect to the debt. Similarly, LeFlore offers no evidence that he informed Green Tree he was represented by legal counsel or that Green Tree continued to contact him despite knowing he was legally represented. Nor is there any evidence in the record that LeFlore could cite to support such claims.

On the other hand, Green Tree offers admissible evidence that LeFlore never communicated that he was represented by legal counsel in regard to the loan. (DPSOF ¶ 79.) Bradford Hardwick is a Regional Manager at Green Tree and is familiar with the systems Green Tree uses to record and create information related to the mortgage loans it services, including the

---

[1] In *Berndt*, the plaintiffs purchased a timeshare condominium under an agreement that required both monthly timeshare payments and payment of maintenance fees to the condominium association. *Id.* at 1127. The plaintiffs defaulted on their monthly payments, and the timeshare agreement was cancelled pursuant to an offer of judgment by the creditor. However, the creditor sent subsequent collection letters for unpaid maintenance fees, and the plaintiffs filed suit against the creditor alleging violations of § 1692c(a)(2). *Id.* at 1133. On the parties' cross-motions for summary judgment, the district court held that the creditor could not have been expected to know that the plaintiffs were represented by counsel where the plaintiffs gave no indication of being represented in connection with the debt referred to in the creditor's collection letters. *Id.*

processes by which Green Tree obtains the loan information in those systems. (Hardwick Decl. ¶¶ 1-2.) According to Hardwick in his sworn declaration, these computerized records are created and maintained in Green Tree's regular course of business as a loan servicer, and Green Tree relies on those records in the ordinary course to conduct its business. (DPSOF ¶ 77.) Included in the records Green Tree creates and maintains, and with which Hardwick is familiar, are collection notes, which contain summaries of communications between Green Tree representatives and third parties regarding each mortgage loan Green Tree services. (DPSOF ¶¶ 77-78.)

The collection notes for LeFlore's loan reflect that at no point did he communicate to Green Tree that he was represented by legal counsel in connection with the loan. (DPSOF ¶ 79.) In fact, if LeFlore had informed Green Tree that he was represented by legal counsel, such communication would be reflected in the collection notes as a matter of company practice. (DPSOF ¶ 82.) Here, the collection notes reflect that LeFlore and his wife contacted Green Tree themselves on several occasions to discuss the status of his mortgage loan. (DPSOF ¶ 80.) Significantly, LeFlore not only fails to dispute contacting Green Tree directly regarding his loan, but admits to calling Green Tree "numerous times to work things out." (DPSOF ¶ 28.)

In the face of this evidence, LeFlore's lone conclusory allegation that Green Tree contacted him despite knowing he had an attorney is insufficient to prove a violation under the FDCPA. Given LeFlore's admission that he directly contacted Green Tree regarding his loan and the absence of any notation of legal representation in the collection notes, LeFlore's allegation that Green Tree violated § 1692c(a)(2) of the FDCPA should be dismissed with prejudice.

**B. LeFlore did not provide written notice to Green Tree that he refused to pay his mortgage loan.**

Just as LeFlore cannot demonstrate that Green Tree contacted him despite knowing he was represented by legal counsel, LeFlore cannot prove that Green Tree violated § 1692c(c) by "[c]ontact[ing] him after repeatedly being advised that [he] refused to pay." (*See* Compl. [dkt. 1] ¶ 22(b).)  Under § 1692c(c), also known as the "cease communication" directive of the FDCPA, debt collectors are prohibited from communicating with consumers after being "[n]otified in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication[.]"  15 U.S.C. § 1692c(c); *see also Beal v. Wyndham Vacation Resorts, Inc.*, 956 F. Supp. 2d 962, 977 (W.D. Wis. 2013) ("[a] debtor can ask a debt collector to cease and desist collection effects, but the request must be in writing.")  Accordingly, protection under this section of the FDCPA is triggered only when the consumer notifies the debt collector in writing to cease all communications.

Although LeFlore's motion for summary judgment fails to develop any legal argument related to § 1692c(c), his unsupported allegations that he and his wife repeatedly *told* Green Tree that they would not pay and owed no debt are not enough to trigger the FDPCA.  (*See* DPSOF ¶ 28.)  Notably, LeFlore does not even allege in his Complaint that he provided Green Tree with the requisite written notice, admitting, meanwhile, that he contacted Green Tree directly regarding his loan.  (*Id.*)  It thus comes as no surprise that LeFlore fails to offer any evidence that he provided written notice to Green Tree directing it to cease all communications in connection with his loan.

Despite LeFlore's deficient attempt to prove a violation of the FDCPA's cease communication directive, Green Tree offers admissible evidence that it never received written

notice from LeFlore that he refused to pay the debt or that Green Tree should stop contacting him regarding the loan.  As a matter of practice, Green Tree representatives are trained to enter summaries of all communications with borrowers into the collection notes and if LeFlore had indeed communicated either that he refused to pay or did not want to be contacted, such communication would be reflected in the collection notes associated with his loan.  (DPSOF ¶ 82.)  Additionally, a copy of the written notice from LeFlore would be maintained in Green Tree's loan file and the loan file is devoid of any such written notice.  (*Id.*)  Thus, through the declaration of Hardwick, Green Tree offers admissible evidence that LeFlore did not provide written notice to Green Tree of his refusal to pay the debt or that Green Tree should stop communicating with him regarding such debt.  (DPSOF ¶ 81.)

For these reasons, it is undisputed that LeFlore never provided Green Tree with the requisite notice to trigger the FDCPA's cease communication directive.  Without written notice from LeFlore, there can be no violation of § 1692c(c).

### C.  Green Tree did not misrepresent the amount and legal status of the debt nor did it threaten action that could not be taken.

The crux of LeFlore's remaining FDCPA claim is that Green Tree's representations as to "the character, amount, or legal status" of his debt were "false, deceptive or misleading."  *See* 15 U.S.C. § 1692e(2)(A).  Contrary to LeFlore's unsubstantiated allegations, however, this is not a case in which Green Tree attempted to collect on an entirely non-existent debt.  Rather, LeFlore owed a debt when Green Tree began servicing his loan.

To prove a violation under § 1692e(2)(A), the plaintiff must show that the deceptive elements of the defendant's communications regarding the debt were false or confusing so as to mislead the "unsophisticated consumer."  *See Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 565-66 (7th Cir. 2004); *see also Crafton v. Law Firm of Jonathan B. Levine*, 957 F. Supp. 2d

992, 996 (E.D. Wis. 2013) ("[t]he unsophisticated consumer may be uninformed, naïve, [and] trusting, but is not a dimwit, has rudimentary knowledge of the financial world and is capable of making basic logical deductions and inferences.")  The unsophisticated consumer standard is an objective analysis and, as such, turns on whether the unsophisticated consumer would have been misled – not whether the particular plaintiff was deceived.  *Id.* at 996; *see also Bode v. Encore Receivable Mgmt., Inc.*, No. 05-cv-1013, 2007 WL 2493898 (E.D. Wis. Aug. 30, 2007).

Like his other allegations, LeFlore fails to state a violation of § 1692e(2)(A).  First, LeFlore makes no factual allegation that Green Tree's representations violated the unsophisticated consumer standard.  He simply declares that he "never owed any money to the defendant Green Tree."  (DPSOF ¶ 16.)  Second, the only "proof" LeFlore offers are his own unfounded contentions that he owed no debt.  (DPSOF ¶ 92.)  The record is simply devoid of any evidence to support his claim that he did not owe anything on his mortgage loan.

To the contrary, Green Tree offers uncontroverted admissible evidence via the loan payment history that LeFlore owed money on his mortgage loan when it took over servicing from Bank of America.  (DPSOF ¶ 49.)  Green Tree goes one step further, however, by providing documents corroborating the amounts depicted as due and owing on the loan payment history.  For example, prior to the fire, Bank of America had to advance funds to pay LeFlore's property tax delinquencies on the rental property, which amounts were added to his outstanding balance.  (DPSOF ¶ 44-45.)   Next, after the fire, LeFlore stopped making his monthly mortgage payments and the loan payment history demonstrates that he never cured his April 2011 default.  (DPSOF ¶ 49.)  As a result, on April 4, 2011, when Meritplan tendered the insurance check to Bank of America in the amount of $56,250 (DPSOF ¶ 50), the insurance funds were insufficient

to pay off the loan because LeFlore failed to pay the 2010 real estate property taxes. (DPSOF ¶ 54.)

If this were not enough, in May 2011, Bank of America sent LeFlore a "Payoff Funds Shortage" Alert indicating that the insurance funds were $3,223.18 short of paying off the loan. (DPSOF ¶ 57.) In addition, because LeFlore failed to raze the rental property in a timely manner, the City of Milwaukee executed an emergency raze order and explained to LeFlore that "[a]ny expenses not covered by the withheld [insurance] funds [would] be placed as a lien on the real estate and will appear as a special charge on the tax bill." (DPSOF ¶ 64.)

Green Tree began servicing the loan on May 1, 2013. (DPSOF ¶ 72.) On or about May 15, 2013, Green Tree received $58,166.65 in insurance funds from Bank of America. (DPSOF ¶ 73.) The insurance funds were not enough to pay off the loan so Green Tree held the funds in a suspense account being sure to apply the accruing interest to the unpaid principal balance of the loan beginning in July 2013. (DPSOF ¶ 74.) Fannie Mae guidelines prohibited Green Tree from applying the insurance funds to the unpaid principal balance because LeFlore's loan was not current. (DPSOF ¶ 75.)

Accordingly, Green Tree's representations to LeFlore that he owed a debt and that the amount of the debt was steadily increasing proved accurate and would not have misled an unsophisticated consumer who, like LeFlore, was well aware that the insurance funds did not satisfy the payoff amount of the loan. Therefore, LeFlore's claim that Green Tree misrepresented the amount of legal status of his debt should be dismissed with prejudice.

**D. LeFlore fails to prove actual damages under the FDCPA.**

LeFlore argues that, as a result of Green Tree's alleged FDCPA violations, he was diagnosed with COPD in May 2013, and that "[t]he stress of [Green Tree's] debt collection

efforts severely exacerbated the problem." (Pl.'s Mot. [dkt. 24-2] ¶ 29.)  According to LeFlore, "his health situation only began to improve after Green Tree released the mortgage." (*Id.*)  And, as such, LeFlore claims damages in the amount of "$50,000 for personal humiliation, embarrassment, mental anguish and exacerbating his COPD[,]" in addition to statutory damages under the FDCPA.  (*Id.* ¶ 35.)  There are several problems, however, with LeFlore's request for damages.

First, LeFlore does not even try to explain how he came up with the $50,000 figure.  He certainly does not attempt to provide a calculation, let alone provide any medical invoices.  Neither does he offer any admissible evidence from his treating physician regarding his COPD.  Instead, he simply concludes that he is entitled to $50,000 because he says so.

Second, to recover actual damages under the FDCPA, a plaintiff must show a direct causal connection between the damages alleged and the debt collector's allegedly false representation of the amount of the debt.  *Crafton v. Law Firm of Jonathan B. Levine*, 957 F. Supp. 2d 992, 1002 (E.D. Wis. 2013), *citing Thomas v. Law Firm of Simpson & Cyback*, 244 Fed. Appx. 741, 743 (7th Cir. 2007).  Moreover, a plaintiff seeking emotional damages must provide the court with a "reasonably detailed explanation of the injuries suffered." *Id.* at 1002-03 ("[c]onclusory statements that receiving the letter caused her stress . . . do not constitute a detailed explanation of her injuries.")

In this case, even if LeFlore's allegation of COPD is accepted, he points to no evidence, nor is there any evidence in the record, of a direct causal connection between his COPD and Green Tree's attempt to collect on the loan.  The same is true regarding LeFlore's damages based on emotional distress.  Without any evidence to support his claim for damages, LeFlore's allegations that Green Tree's collection efforts exacerbated his COPD are not enough for a court

to award actual damages in his favor. Hence, even if LeFlore could prove any of the alleged FDCPA violations, he has failed to prove that he suffered actual damages.

## II.    GREEN TREE IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON LEFLORE'S TCPA CLAIM.

LeFlore alleges that Green Tree violated the TCPA by "autodial[ing his] cell phone many times about a debt he did not owe." (Compl. [dkt. 1] ¶ 26 at 4.) In support of his summary judgment motion, however, LeFlore simply suggests that "Green Tree had computers call LeFlore 3-4 times per week from June 2013 through August 2014 attempting to get LeFlore to pay their invoices and demanding that LeFlore call their numbers." (Pl.'s Mot. for Summ. J. [dkt. 24-2] ¶ 28 at 4.) This singular averment hardly supports a claim under § 227(b)(1)(A) of the TCPA, which prohibits the use of automatic telephone dialing system or prerecorded voice in making any call to a cell phone number unless that prior express consent is obtained. 47 U.S.C. § 227(b)(1)(A)(iii).

LeFlore's TCPA claim is fatally deficient for three reasons. First, LeFlore produces no evidence to support his claim that Green Tree actually autodialed his cell phone. He does not offer any phone records to demonstrate that he even received calls from Green Tree on his cell phone. Neither does he offer any support for his allegation that Green Tree used an "autodialer." LeFlore merely relies on the allegations in his Complaint that Green Tree autodialed his phone "many times[.]" (*See* Compl. [dkt. 1] ¶ 26 at 4.)

Second, Green Tree offers admissible evidence that affirmatively disproves LeFlore's allegations. Green Tree did not place calls to LeFlore's cell phone and, as a precautionary measure, ran a "cell scrub" to ensure that it was not calling a cell phone number. (DPSOF ¶ 83.) In addition, Green Tree's collection notes indicate that LeFlore never revoked consent for Green Tree to contact him on the phone number he provided Green Tree regarding the mortgage loan.

(DPSOF ¶ 84.)  As a matter of practice at Green Tree, had LeFlore communicated that he was

revoking consent for Green Tree to contact him on the phone number he provided, such

communication would be reflected on the collection notes for LeFlore's loan.  (DPSOF ¶ 82.)

Third, although LeFlore alleges damages associated with his TCPA claim in his

Complaint, he fails to ask for any TCPA damages in his summary judgment motion.  Perhaps it

was an oversight on LeFlore's part, but it proves fatal to his claim because he has not

demonstrated any harm.  A violation of the TCPA by Green Tree would entitle LeFlore to either

the actual monetary loss from the violation or $500 in damages for each violation, whichever is

greater.  47 U.S.C. § 227(b)(3).[2]  However, he has offered no evidence from which the Court

could even attempt to calculate the number of supposed "autodialer" calls to his cell phone, let

alone the actual monetary loss he may have suffered.  And, unlike many consumer protection

statutes, the plain language of the TCPA's private right of action clause does not provide for the

recovery of attorneys' fees; nor does the relevant case law suggest that such an award is proper

absent a fee-shifting provision negotiated by the parties for settlement purposes.  *Id*.; *see*

*Americana Art China Co., v. Foxfire Printing and Packaging, Inc.*, 743 F.3d 243 (7th Cir. 2014).

Therefore, even if LeFlore had offered admissible evidence of a TCPA violation by Green Tree,

he once again has failed to prove any damages, and his TCPA claim should be dismissed with

prejudice.

### III.    LEFLORE'S SLANDER OF TITLE CLAIM FAILS AS A MATTER OF LAW

For his final claim, LeFlore alleges that "Green Tree has slandered title to [his] property

by filing and maintaining a false lien/ lis pendens."  (Compl. [dkt. 1] ¶ 29.)  LeFlore fails to meet

---

[2] A person or entity may bring "[a]n action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation, an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation . . . or both actions."  47 U.S.C. § 227(b)(3)(A)-(C).

his burden under Wisconsin's slander of title statute, Wis. Stat. § 706.13, to prove that Green Tree filed or recorded a lien or other instrument relating to the mortgaged property that impaired his title to the property. *See Niedert v. Rieger*, 200 F.3d 522, 528 (7th Cir. 1999).

LeFlore provides no evidence that Green Tree ever recorded a lis pendens against the rental property or that it maintained a false mortgage lien. First, Bank of America initiated both foreclosure actions against LeFlore, not Green Tree. (DPSOF ¶¶ 66, 69.) As a result, Bank of America, rather than Green Tree, recorded the lis pendens. (*Id.*) In addition, Green Tree has offered admissible evidence that the mortgage lien was valid and that it wrote off more than $17,000 to satisfy LeFlore's mortgage. Based on these facts, LeFlore does not have a viable state law claim for slander of title.

Beyond these evidentiary deficiencies, LeFlore's reliance on Wis. Stat. § 706.13 is misplaced because the statute applies only to claims in which the plaintiff's *ownership* interest is challenged, not the plaintiff's right to *use* the property. *Niedert*, 200 F.3d at 528. Here, LeFlore specifically claims damages arising from the "[e]onomic value of [his] loss of the real estate value due to Green Tree's slander of title violations was $12,000 for inability to use, improve or sell the property." (Pl.'s Mot. for Summ. J. [dkt. 24-2] ¶¶ 31, 35(a).)[3] Green Tree's collection efforts had no effect on LeFlore's ownership interest in the property because, on August 20, 2014, LeFlore transferred the property to a third party purchaser pursuant to a quit claim deed. (DPSOF ¶ 90.) As such, his damages fall outside the scope of the statute, rendering any recovery unavailable.

---

[3] Records publicly available from the City Tax Assessor's Office demonstrate that the value of the rental property after the fire was only $2,500. (DPSOF ¶ 91.) LeFlore provides no basis for his $12,000 figure.

## IV. LEFLORE'S MOTION FAILS TO MEET THE RULE 56 PROCEDURAL REQUIREMENTS

In addition to the evidentiary defects discussed above, LeFlore's motion for summary judgment fails to satisfy the fundamental, procedural requirements set forth in both the Federal Rules of Civil Procedure and the Local Rules promulgated by this Court. Specifically, Federal Rule of Civil Procedure 56(c) requires movants to support an assertion of fact by, "[c]iting to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). Further, the rules require that any "affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

In addition to the requirements under the federal rules, the Local Rules of this Court expressly require movants to file both "a statement setting forth any material facts to which all parties have stipulated; [and] a statement of proposed material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law[.]" Civ. L. R. 56(b)(1)(B)-(C). The statement of proposed material facts must consist of short numbered paragraphs with specific references to the supporting materials referred to in the federal rules. Civ. L. R. 56(b)(1)(C)(i). Notably, a movant's "[f]ailure to submit such a statement constitutes grounds for denial of the motion." Civ. L. R. 56(b)(1)(C)(iii).

As a starting point, LeFlore's motion papers violate the procedural requirements set forth in the Federal Rules of Civil Procedure. For example, the only supporting materials referred to in LeFlore's motion for summary judgment consist of his declaration and a statement of material

facts. (*See generally* Pl.'s Mot. for Summ. J. [dkt. 24].) However, LeFlore attaches no exhibits to his supporting papers that would establish a prima facie case regarding his allegations of violations to the FDCPA, TCPA, or Wisconsin's slander of title statute. And although he purports to rely on his "verified complaint," LeFlore did not file a verified complaint in this matter. (*See* Compl. [dkt. 1].) As a result, LeFlore's motion papers fail to establish a prima facie case; whereas, in contrast, Green Tree has produced admissible evidence through the declarations of Hardwick and Cook in support of its cross-motion.

LeFlore's declaration also fails to establish that he has the requisite personal knowledge for asserting the allegations contained therein. For example, LeFlore argues that Bank of America conspired with Pitzka Wrecking, Inc., the company with whom he had obtained the initial quote for demolition services, to increase the amount of the demolition thereby "causing a theft" of the insurance proceeds in the amount of $11,565.45. LeFlore does not explain how he came to these conclusions or the basis that he would have firsthand knowledge of a conspiracy between Bank of America and Pitzka Wrecking, Inc. On the other hand, Green Tree presents uncontroverted evidence that, in fact, the City razed the property, and that the cause for the increased expenses for razing the property was LeFlore's failure to ensure that the property was timely razed pursuant to the initial price quote he supposedly obtained. (DPSOF ¶¶ 62-63.) Bank of America's only involvement with respect to the razing of LeFlore's property was its advancement of funds to reimburse the City. LeFlore's bare assertion that the facts are otherwise is insufficient to demonstrate admissibility.

LeFlore's statement of material facts also violate the Local Rules promulgated by the Court by failing to set forth short numbered paragraphs with specific reference to the supporting evidence that would be admissible at trial. Instead, LeFlore's statement of material facts merely

echoes his declaration, which itself repackages the allegations raised in the Complaint.  This failure to comply with the procedural requirements in either the Federal Rules of Civil Procedure or the Local Rules of this Court warrant dismissal of LeFlore's motion by this Court as a matter of law.

## CONCLUSION

Based on the foregoing, Green Tree requests that the Court grant summary judgment in its favor on all of LeFlore's claims.  In the alternative, however, Green Tree requests that the Court deny LeFlore's motion and, at the same time, grant leave for the parties to conduct limited discovery regarding LeFlore's alleged damages.

Dated:  May 19, 2015.

s/Erin M. Cook
Jonathan R. Ingrisano
State Bar No. 1033977
Erin M. Cook
State Bar No. 1074294
Attorneys for Defendant
GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, WI  53202-3590
Ph:  (414) 273-3500
Fx:  (414) 273-5198
Email:  jingrisano@gklaw.com/mcook@gklaw.com

13609911.4