# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

**LJ LEFLORE,**

        Plaintiff,

    **-vs-**                        **Case No. 14-C-153**

**GREEN TREE SERVICING LLC,**

        Defendant.

---

# DECISION AND ORDER

---

Plaintiff LJ LeFlore claims that Defendant Green Tree Servicing LLC's attempt to collect his alleged mortgage debt violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692; the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227; and constituted slander of title in violation of Wis. Stat. § 706.13(1). Jurisdiction is afforded over the federal claims pursuant to 28 U.S.C. § 1331, with supplemental jurisdiction over LeFlore's state claim pursuant to 28 U.S.C. §1367. Venue in this action lies properly in this District pursuant to 28 U.S.C. §1391(b)(2).

This matter is before the Court on the parties' cross-motions for summary judgment (ECF Nos. 24, 29.) These motions come in the wake of the Court's ruling based on the pleadings that "since at least August 28, 2014, [when the mortgage release was recorded, there was] no mortgage debt [owed by LeFlore] to Green Tree." (ECF No. 22, at 10.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Summary judgment should be granted when a party that has had ample time for discovery fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* If the moving party establishes the absence of a genuine issue of material fact, the non-moving party must demonstrate that there is a genuine dispute over the material facts of the case. *Id.* at 323-24. The Court must accept as true the evidence of the nonmovant and draw all justifiable inferences in his favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). Summary judgment is appropriate only "where the factual record taken as a whole could *not* lead a rational trier of fact to find for the non-moving party." *See Bunn v. Khoury Enters., Inc.,* 753 F.3d 676, 681 (7th Cir. 2014) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). On cross-motions for summary judgment, the Court assesses whether each movant has satisfied the requirements of Rule 56. *See Cont'l Cas. Co. v. Nw. Nat'l Ins. Co.,* 427 F.3d 1038, 1041 (7th Cir. 2005); *see also Laskin v. Siegel,* 728 F.3d 731, 734 (7th Cir. 2013).

- 2 -

LeFlore filed a statement of material facts (SMF). (ECF No. 24-2.) Green Tree filed a response and additional SMF. (ECF No. 31.)

Green Tree objects to LeFlore's SMF, asserting that it violates the procedural requirements for summary judgment motions as set forth by the Federal Rules of Civil Procedure and this District's Local Rules.[1] (ECF No. 30, at 21-22.) Green Tree states that although LeFlore purports to rely on his verified complaint, his complaint is not verified. Green Tree also states that LeFlore fails to state he has personal knowledge for his allegations, citing as

---

[1] Civil L.R. 56(b)(2)(B) and (C) provide that "[e]ach party opposing a motion for summary judgment must file . . .

(B) a concise response to the moving party's statement of facts that must contain:

(i) a reproduction of each numbered paragraph in the moving party's statement of facts followed by a response to each paragraph, including, in the case of any disagreement, *specific references to the affidavits, declarations, parts of the record, and other supporting materials relied upon*, and

(ii) a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, declarations, parts of the record, and other supporting materials relied upon to support the facts described in that paragraph. A non-moving party may not file more than 100 separately-numbered statements of additional facts; and

(C) any opposing affidavits, declarations, and other materials referred to in Fed. R. Civ. P. 56(c).

(Emphasis added.)

Case 2:14-cv-00153-RTR   Filed 01/22/16   Page 3 of 26   Document 40

an example the Complaint's allegation that Bank of America conspired with Pitzka Wrecking, Inc. (the company that provided LeFlore an initial quote for demolition services) to increase the amount of the demolition, thereby "causing a theft" of the insurance proceeds in the amount of $11,565.45. (Compl. ¶ 10, ECF No. 1.) LeFlore does not explain how he came to these conclusions or on what basis he would have firsthand knowledge of a conspiracy between Bank of America and Pitzka.

Indeed, LeFlore's SMF does not cite the particular part(s) of the record which support each factual proposition, instead the introductory portion perfunctorily states that "[p]aragraphs 1-16 were verified in the Complaint and by the court's prior Judgment on the pleadings; [p]aragraphs 17-35 are verified through" LeFlore's declaration. (SMF at 1.) Paragraph 1 of LeFlore's declaration, which is sworn under penalty, "affirm[s] and restate[s] all of the factual statements in [his] complaint and the related exhibits" (ECF No. 24-1); his declaration does not state that it is based on personal knowledge. Rule 56(c)(4) states that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated. Fed. R. Civ. P. 56(c)(4); *see Luster v. Ill. Dep't. of Corr.,* 652 F.3d 726, 731 n.2 (7th Cir. 2011).

Because LeFlore's declaration does not state that it is based on

- 4 -

personal knowledge, it does not provide a proper basis for summary judgment. Therefore, except for LeFlore's SMF to which Green Tree has responded that such statements are undisputed, his factual statements have been excluded as lacking proper evidentiary support.

LeFlore did not file a response to Green Tree's additional SMF. However, LeFlore maintains that the Declaration of Bradford Hardwick, Green Tree's Regional Manager, is without foundation in paragraphs six through twenty-five in that it attaches Bank of America's payment summary as exhibit D, which is not based on actual knowledge and "falsifies" LeFlore's actual payment history. (Pl. Summ. J. Reply Br., 3-4, ECF No. 36.)

Hardwick's declaration is based on his personal knowledge of Green Tree's records regarding the LeFlore loan, which includes records it obtained from Bank of America, the prior servicer of LeFlore's loan. (ECF No. 32, at ¶ 3.) Those prior records and Green Tree's records are maintained in the "ordinary course of business in Green Tree's loan file" (*Id.* at ¶¶ 3, 7.) When an employee with appropriate experience uses records kept in the ordinary course of business to prepare an affidavit, that affidavit cannot be stricken on hearsay grounds because those business records properly fall within a hearsay exception provided by Fed. R. Evid. 803(6). *Thanongsinh v. Bd. of Educ.,* 462 F.3d 762, 777-78 (7th Cir. 2006); *BP Amoco Chem. Co. v. Flint Hills Res., LLC,* 697 F. Supp. 2d 1001, 1021 (N.D. Ill. 2010) (collecting cases

- 5 -

and holding that a document prepared by a third party may qualify as another entity's business record under Rule 803(6) if that entity integrated the third-party record into its records and relied upon it in its day-to-day operations. The proponent also must satisfy the other requirements of Rule 803(6).) *See also Alloc, Inc. v. Pergo, L.L.C.*, No. 00-C-0999, 2010 WL 3808977, at *8 (E.D. Wis. Sept. 23, 2010). The Hardwick declaration establishes the foundation for the admission of Green Tree's own business records, which incorporate those of the Bank of America— including the loan origination file and servicing records. Because LeFlore has not responded, Green Tree's SMF are deemed uncontroverted.

## RELEVANT FACTS

### LeFlore's SMF

LeFlore resides at 4330 North 29th Street, in Milwaukee, Wisconsin. LeFlore is a meat cutter, and his wife works for the school board. He purchased a house and land located at 3024 N. 28th Street, Milwaukee, Wisconsin (the "Property") by means of a note and mortgage from Bank of America secured by that Property. The house on the Property burned down on February 17, 2011.

On April 4, 2011, LeFlore's insurer, Balboa Insurance Group which includes Meritplan Insurance Company, offered its entire policy limit of $75,000 in insurance proceeds which included demolition of the house.

- 6 -

LeFlore accepted the offer. LeFlore received a $10,300 estimate from Pitzka to demolish the house.

Bank of America declined to apply the insurance proceeds from Balboa when the funds were tendered in 2011, claiming that it was owed more. There was nothing in the note or mortgage giving Bank of America the ability to refuse partial payments on the note; it had no prepayment penalty clause.

Bank of America subsequently sued LeFlore in foreclosure in *Bank of America et. al v. LJ LeFlore,* Milwaukee County Circuit Court Case No. 12-CV-4225. Bank of America voluntarily dismissed the foreclosure case without prejudice, giving Bank of America the right to reopen. LeFlore made no payments to Bank of America.

Bank of America subsequently sued LeFlore in foreclosure a second time in *Bank of America et. al v. LJ LeFlor*e, Milwaukee County Circuit Court Case No 12-CV-13785. Bank of America voluntarily dismissed the second foreclosure case.

Effective May 1, 2013, Bank of America transferred the servicing of LeFlore's note and mortgage to Green Tree. LeFlore never made any payments to Green Tree on this Property, loan or mortgage.[2]

Green Tree notified LeFlore that his loan was past due and offered him

---

[2] Green Tree has raised a genuine dispute of material fact regarding whether LeFlore owed money to Green Tree. (*See* Green Tree Resp. LeFlore's SMF ¶ 16, ECF No. 31.)

loss mitigation alternatives.  LeFlore filed this action on February 12, 2014, and Green Tree waived service.  Every month from July 2013 through July 2014, LeFlore received statements and letters from Green Tree stating that his account was past due, severely delinquent, and that he owed a balance to Green Tree.  By letter of October 28, 2014, Green Tree informed LeFlore that his loan had been paid in full.  (Demet Decl. ¶ 1, Attach. 1.) (ECF Nos. 36-1,36-2.)

### Green Tree's SMF

On May 8, 2009, LeFlore executed a fixed-rate note in the principal amount of $52,000 with Bank of America.  The note was secured by a mortgage on the Property, a two-family rental property.   At all relevant times, LeFlore's mortgage loan was owned by the Federal National Mortgage Association ("Fannie Mae").

By letter dated November 30, 2010, Bank of America advised LeFlore that it had reviewed the tax authority's official records and discovered that there were delinquent taxes owed on the Property.   The Bank of America further advised that:

> [I]f the delinquent property taxes owed are not paid within thirty (30) days from the date of this letter, BAC Home Loans Servicing, LP may (but is not required to) pay all delinquent taxes owed, including penalties, interest and/or fees, as well as any taxes due to protect your Lender's interest in the property. *If BAC Home Loans Servicing, LP disburses funds to bring the account current with your Tax*

- 8 -

> Authority, then it will establish an escrow/impound account at the time of the disbursement which will remain in effect thereafter to ensure the timely payment of future taxes. *As a result, your monthly mortgage payment will significantly increase to reimburse any payments made by BAC Home Loans Servicing, LP as well as to collect for upcoming tax bills.*

(Hardwick Decl. ¶ 8, Ex. E, ECF No. 32-5.) (Emphasis added.)

LeFlore failed to pay the tax delinquency. Bank of America paid $7,643.69 to the City of Milwaukee on LeFlore's behalf. Bank of America informed LeFlore that it had advanced funds to pay the property tax delinquencies. Because LeFlore failed to pay the tax delinquency, his escrow account acquired a negative balance of $7,566.01.

On the date of the fire, Meritplan sent LeFlore a letter acknowledging receipt of his fire damage claim and informing him that the policy had a $75,000 limit. In April 2011, LeFlore stopped making his monthly mortgage payments.

Because LeFlore failed to take action to have the Property razed, the City of Milwaukee informed Meritplan, Bank of America, and LeFlore that it had commenced proceedings to obtain an order to raze the rental property and anticipated filing a claim for expenses incurred.

Meritplan withheld $18,570 of the $75,000 policy limit as financial protection against the cost of cleanup. Meritplan provided Bank of America and LeFlore with a summary of the insurance claim payment issued for

- 9 -

LeFlore's fire damage loss. Accompanying the letter was a $56,250 check payable to Bank of America for the actual cash value of the repairs to the rental property, less the policy deductible. Because LeFlore had failed to pay the 2010 real estate property taxes, the insurance funds from Meritplan were insufficient to pay off the loan.

Fannie Mae guidelines prohibit servicers such as Bank of America from applying insurance funds to the unpaid principal balance of a loan when it is not otherwise current. Bank of America sent a Payoff Demand Statement to LeFlore informing him that the payoff amount through April 13, 2011, was $58,773.44, consisting of a principal balance of $50,830.39, $347.04 in interest, and a negative escrow balance of $7,566.01. Bank of America sent a "Payoff Funds Shortage" Alert to LeFlore indicating that the insurance funds were $3,223.18 short of paying off the loan.

LeFlore did not tender payment to compensate for the shortage. Consequently, the insurance funds were not applied to the payoff amount, and a dispute arose between Bank of America and LeFlore as to whether a debt was still owed under the loan. LeFlore sent a letter to Bank of America expressing concern that the insurance funds were insufficient to pay off his entire mortgage loan. Bank of America responded to LeFlore stating that his account was past due for the April 2011 monthly mortgage payment, and that

- 10 -

the two checks it received from Meritplan totaling $56,250[3] were insufficient to pay off the mortgage loan in April 2011, and therefore the insurance funds could not be applied to his account.

The Property was razed pursuant to an emergency raze order by the City of Milwaukee  The City of Milwaukee sent Meritplan an itemized statement of costs incurred in the demolition and requested that Meritplan remit payment in the amount of $21,865.45 from withheld funds.  (Hardwick Decl. ¶ 18, Ex. M.)   A copy was also sent to LeFlore, and the City of Milwaukee explained that "[a]ny expenses not covered by the withheld funds will be placed as a lien on the real estate and will appear as a special charge on the tax bill.  In addition, the vacant lot will be referred to a contractor to be restored to a dust-free and erosion free condition. The charge resulting from this work will be assessed on the tax roll." (*Id.,* Ex. M.)

The City of Milwaukee was not fully reimbursed because Meritplan had only retained $18,750 in withheld funds.  Given that LeFlore had not cured his April 2011 default or tendered the payoff shortage, Bank of America filed a complaint for foreclosure and recorded a lis pendens in Milwaukee County in April 2012.  By the end of September 2012, Bank of America and LeFlore stipulated to dismiss the case "without prejudice and with [the] right

---

[3]Green Tree's additional SMF ¶ 61, citing Hardwick Decl., Ex. L, states that the total of the two checks was $58,166.65, a figure not stated in the letter.  The Court has corrected the amount.

- 11 -

to reopen in the event a loan modification cannot be finalized." (Compl., Ex. 3, ECF No. 1-3.) Bank of America recorded a release of lis pendens on October 5, 2012.

LeFlore did not enter into a loan modification. Therefore Bank of America opened another foreclosure action and recorded a new lis pendens in December 2012. In June and July 2013, Bank of America agreed to dismiss the foreclosure action, again without prejudice, and recorded another release of lis pendens. Despite Bank of America's dismissal, LeFlore never cured his default, entered into a loan modification, or tendered the payoff shortage.

Effective May 1, 2013, Bank of America transferred the servicing of LeFlore's loan to Green Tree. Green Tree received $58,166.65 in insurance funds from Bank of America on May 15. The insurance funds were not enough to pay off the loan, so Green Tree held the funds in a suspense account and applied the accruing interest to the unpaid principal balance starting in July 2013.

According to the 2012 Fannie Mae Servicing Guidelines, hazard claim proceeds may be used in one of three ways:

> 1) Repair the collateral
> 2) Pay in Full/Reduce the UPB (unpaid principal balance) on a current loan
> 3) Reduce the foreclosure bid.
>
> If the homeowner wishes to use the hazard claim proceeds toward the mortgage debt/upb, they should contact [the]

- 12 -

> Loss Mitigation department and discuss options to bring the loan current. Once this is completed, you may apply the hazard loss proceeds as a principle [sic] curtailment.

(Hardwick Decl. ¶ 24, Ex. N.)

Included in the records Green Tree creates and maintains in the regular course of business are collection notes, which contain summaries of communications between Green Tree representatives and third parties regarding each mortgage loan Green Tree services. According to Green Tree's collection notes, at no point did LeFlore communicate to Green Tree that he was represented by legal counsel in regard to the loan. Rather, the collection notes reflect that LeFlore and his wife contacted Green Tree themselves on several occasions to discuss the status of the mortgage loan. In addition, LeFlore never provided written notice to Green Tree that he refused to pay the debt or that Green Tree should stop communicating with him regarding the mortgage loan.

As a matter of practice, Green Tree representatives are trained to enter summaries of all communications with borrowers into the collection notes, and if LeFlore had communicated either that he was represented by legal counsel in regard to the mortgage loan, that he refused to pay the debt, or that Green Tree should stop communication with him, such communication would be reflected in the collection notes for his loan. Written notice from LeFlore would be maintained in Green Tree's loan file.

- 13 -

Green Tree did not place calls to LeFlore's cell phone. As a precautionary measure, it ran a "cell phone scrub" to ensure that it was not calling a cell phone number. LeFlore never revoked consent for Green Tree to contact him at the phone number he provided Green Tree regarding the mortgage loan.

LeFlore's Complaint alleges federal violations of the FDCPA and the TCPA, and violations of Wis. Stat. § 706.13, Wisconsin's slander of title statute. Green Tree answered the Complaint, denying LeFlore's allegations and asserting affirmative defenses, including LeFlore's failure to state a claim upon which relief can be granted, the Court's lack of supplemental jurisdiction over LeFlore's state law claim, and the doctrines of laches and/or waiver.

On July 31, 2014, in the midst of informal settlement negotiations, Green Tree retroactively applied the insurance funds as of April 22, 2011, the date Bank of America received the initial payoff request from LeFlore. Green Tree wrote off the remaining $17,928.50 balance on the mortgage loan and provided LeFlore with a Satisfaction of Mortgage.

On August 20, 2014, LeFlore executed a quit claim deed transferring the Property to Davis Construction, Inc.

As of 2012, the Property had an assessed value of $2,500. Despite receiving a satisfaction of mortgage, LeFlore continues to pursue his claims against Green Tree.

- 14 -

# ANALYSIS

LeFlore seeks summary judgment on his FDCPA and TCPA claims and his supplemental state claim. Green Tree maintains that each of LeFlore's claims is based on his false premise that the insurance proceeds should have paid off his entire debt under the note and mortgage, and it seeks summary judgment dismissing all of LeFlore's claims.

## *FDCPA*

LeFlore seeks summary judgment that between May 2013 and August 2014 Green Tree violated the FDCPA by (1) contacting him after being advised that LeFlore refused to pay, in violation of 15 U.S.C. § 1692c(c); (2) falsely representing the amount and legal status of the debt, threatening to communicate false credit information, threating action that could not be taken, using false representations to collect a debt, using a prejudgment lien to collect a debt by maintaining a lis pendens, misrepresenting the amount of the debt by adding on charges that were uncertain and/or contrary to law, and failing to report to credit agencies that the debt was dispute, all in violation of 15 U.S.C. § 1692e; (3) using unconscionable means by trying to collect amounts not permitted by law, in violation of 15 U.S.C. § 1692(f); and (4) contacting him directly although it knew that he was represented by counsel in prior proceedings. In so contending, LeFlore quotes the Complaint and asserts that it is undisputed that no debt was owed and there was never a

- 15 -

debt owed. He further states that he made no payment after the 2011 insurance payouts to Bank of America and that he always contested the debt. He also cites this Court's purported ruling that no debt is owed, neglecting to mention that the Court held that "since at least August 28, 2014, [when the mortgage release was recorded]" there was no debt owed to Green Tree by LeFlore.

15 U.S.C. § 1692c(c) provides:

> If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except--
>
> (1) to advise the consumer that the debt collector's further efforts are being terminated;
>
> (2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or
>
> (3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy.
>
> If such notice from the consumer is made by mail, notification shall be complete upon receipt.

LeFlore has not presented admissible evidence indicating he communicated in writing to Green Tree that he refused to pay the alleged debt or that he wanted Green Tree to cease communicating with him. Furthermore, Green Tree has presented evidence indicating that LeFlore

- 16 -

never provided it written notice that he refused to pay the debt or that it should stop communicating with him regarding the mortgage loan.

Construing the evidence in the light most favorable to Green Tree, given its practice of training its representatives to record summaries of all communications with borrowers into the collection notes, its practice of keeping written notices from borrowers in the loan file, and the absence of any such collection notes or written notices for LeFlore's loan, LeFlore has failed to establish that no reasonable jury could find for Green Tree on this claim. Furthermore, with respect to Green Tree's cross-motion, despite construing the facts in the light most favorable to him, LeFlore has failed to present facts upon which a reasonable jury could find in his favor. Therefore, this portion of LeFlore's claim is dismissed.

15 U.S.C. § 1692e provides that:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> * * * *
>
> (2) The false representation of--
>
> (A) the character, amount, or legal status of any debt; or
>
> * * * *
>
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

- 17 -

* * * *

> (8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

* * * *

> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt. . . .

LeFlore's initial brief asserts, without analysis, that he has established a laundry list of § 1692e violations. In reply, he states that summary judgment should be entered in his favor that no debt was owed when Green Tree misrepresented the amount and character of the purported debt from the time that it acquired the purported mortgage until the August 2014 filing of the motion for judgment on the pleadings. (ECF No. 36.) He also notes that in October 2014 Green Tree sent an acknowledgement that the loan was paid in full.

While the Court held on the pleadings that there was no debt since at least August 28, 2014, it did not address whether there was a debt prior to that time period. LeFlore's summary judgment submissions overstate the Court's holding. Furthermore, LeFlore has not established that the debt which Green Tree attempted to collect had been satisfied prior to August 2014.

The record reflects that the payment dispute was settled during

- 18 -

informal negotiations during July 2014, but under Rule 408 of the Federal Rules of Evidence that may not be used to prove or disprove the validity or the amount of Green Tree's, or LeFlore's, disputed claim. Thus, neither the settlement nor the satisfaction of the mortgage which is part of that settlement may be considered as disproving Green Tree's disputed claim or as proving LeFlore's disputed claim that the insurance funds satisfied his debt.

LeFlore asserts that Hardwick's declaration and Bank of America's accounting history are false. That bald assertion lacks factual support.

Moreover, LeFlore does not address the fact that prior to the fire Bank of America paid his delinquent 2010 property taxes. That payment on LeFlore's behalf increased his debt to Bank of America and meant that the insurance proceeds were insufficient to pay off the loan. Construing the facts in the light most favorable to Green Tree, LeFlore has not established that no reasonable jury could find for Green Tree on his claim that Green Tree misrepresented the amount and/or character of the debt from the time that it acquired the mortgage.

Green Tree seeks summary judgment dismissing the § 1692e(2)(A) claim. LeFlore's claim is predicated on his assertion that he owed nothing at the time Green Tree acquired the debt. However, the undisputed facts establish that the amount Bank of America transferred to Green Tree was insufficient to pay off LeFlore's debt. Despite construing the evidence in the

- 19 -

light most favorable to LeFlore, he has not presented evidence that raises a factual dispute regarding the correctness of that assertion. Therefore, based on the parties' submissions, Green Tree has established that it is entitled to summary judgment dismissing LeFlore's claim.

Under § 1692c(a)(2), a debt collector may not communicate with a consumer without the consumer's permission "if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address." 15 U.S.C. § 1692c(a)(2). LeFlore has not presented facts which could establish that he informed Green Tree he was represented by counsel with respect to the debt. He asks that Green Tree infer he was represented by counsel because he had counsel in the foreclosure proceedings. (Pl. Reply Br. 9.) However, Green Tree was not a party to the foreclosure actions, and that knowledge should not be imputed to it. *See Berndt v. Fairfield Resorts, Inc.*, 337 F. Supp. 2d 1120, 1133 (W.D. Wis. 2004). Construing the facts in the light most favorable to Green Tree, LeFlore has not established that summary judgment should be granted on his § 1692c(a)(2) claim. Conversely, despite construing the facts and the reasonable inferences from those facts in the light most favorable to LeFlore, he has not presented facts indicating that he was represented by counsel with respect to the debt. Therefore, LeFlore's § 1692c(a)(2) claim is dismissed on summary judgment.

- 20 -

*TCPA*

LeFlore seeks summary judgment with respect to his TCPA claim that Green Tree's computer dialed "his phone" many times without his express prior consent. (ECF No. 24, 2; *see also*, ECF No. 36, 10.) Green Tree counters that LeFlore has produced no evidence to support his claim that Green Tree autodialed his cell phone and it has offered uncontroverted evidence to the contrary and, therefore, the claim should be dismissed.

The TCPA provides in relevant part that it shall be unlawful for any party "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a . . . cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii).

Because LeFlore has offered no facts to support his claim that Green Tree used an automated calling system to call his cell phone, a reasonable jury could not find for him. Therefore, his motion for summary judgment on the TCPA claim is denied.

The facts presented by Green Tree establish that it did not auto-dial LeFlore's cell phone. LeFlore has not presented any facts in opposition to Green Tree's summary judgment motion on this claim. Thus, despite construing the facts in the light most favorable to LeFlore, he cannot

- 21 -

overcome Green Tree's summary judgment motion on his TCPA claim, and the motion in granted.

## Slander of Title Claim

At this juncture, LeFlore's federal claims have been dismissed on summary judgment. There remains pending his supplemental state statutory slander of title claim, which has been briefed by the parties. The briefs are silent on the issue of how the Court should proceed under these circumstances. The supplemental jurisdiction statute provides that a district court "may" decline to exercise jurisdiction over supplemental state-law claims for several enumerated reasons, including where "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

The Court is aware that when all federal claims have been dismissed prior to trial, the principle of comity encourages federal courts to relinquish supplemental jurisdiction pursuant to § 1367(c)(3). *Hansen v. Bd. of Trs. of Hamilton Se. Sch. Corp.,* 551 F.3d 599, 607 (7th Cir. 2008). Although the Court may relinquish its supplemental jurisdiction if one of the conditions of § 1367(c) is satisfied, it is not required to do so. *Id.* Supplemental jurisdiction is a doctrine of discretion, and its "justification lies in considerations of judicial economy, convenience and fairness to litigants." *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726 (1966).

- 22 -

Additionally, even where the district court has dismissed all of the federal claims over which it has original jurisdiction, its discretion to remand supplemental state-law claims is not absolute. *See In re Repository Tech., Inc.*, 601 F.3d 710, 725 (7th Cir. 2010). "[I]f a district court's pre-trial disposition of a federal claim would have 'preclusive effect' on the supplemental state-law claims, . . . the court should retain supplemental jurisdiction." *Id.* That is because "when a state-law claim is clearly without merit, it invades no state interest—on the contrary, it spares overburdened state courts additional work that they do not want or need—for the federal court to dismiss the claim on the merits rather than invite a further, and futile, round of litigation in the state courts." *Id.* Because LeFlore's claim is clearly without merit, and it is likely that this action would have a preclusive effect on his slander of title of claim,[4] this Court addresses the claim.

Slander of title exists under Wisconsin law in both common law and statutory form, and its elements are largely the same under either: "A

---

[4] Under the doctrine of res judicata, which is also known as claim preclusion, "a final judgment is conclusive in all subsequent actions between the same parties as to all matters which were litigated or which might have been litigated in the former proceedings." *Lindas v. Cady,* 183 Wis. 2d 547, 515 N.W.2d 458, 463 (Wis. 1994) (quoted source omitted). Claim preclusion requires identity between parties, identity between causes of action, and a final judgment on the merits in a court of competent jurisdiction. *See Kruckenberg v. Harvey,* 279 Wis. 2d 520, 694 N.W.2d 879, 885 (Wis. 2005).

knowingly false, sham or frivolous claim of lien or any other instrument relating to real or personal property filed, documented or recorded which impairs title is actionable in damages." *Kensington Dev. Corp. v. Israel,* 142 Wis. 2d 894, 419 N.W.2d 241, 244 (Wis. 1988). *See* Wis. Stat. § 706.13(1) (1999); *see also Niedert v. Rieger,* 200 F.3d 522, 528 (7th Cir. 1999).

Wisconsin law provides that any plaintiff who brings "an action where relief is demanded affecting . . . real property which relief might confirm or change interests in the real property" must file a lis pendens "in the office of the register of deeds of each county where any part [of the real property] is situated." Wis. Stat. § 840.10(1)(a). When a lis pendens is filed, "a subsequent purchaser or encumbrancer [is] bound by the proceedings in the action to the same extent and in the same manner as if a party thereto." *Belleville State Bank v. Steele,* 117 Wis. 2d 563, 345 N.W.2d 405, 407 (Wis. 1984) (citing Wis. Stat. § 840.10(1)). The statute applies to actions filed in all courts in Wisconsin, "including United States district courts." Wis. Stat. § 840.10(4).

LeFlore maintains that Green Tree slandered the title of the Property by filing and maintaining the "false mortgage lien." However, he has not presented facts that establish that the lis pendens was "false." Green Tree relies on evidence indicating that the lis pendens was valid because the insurance proceeds were insufficient to satisfy the loan and that as a result of the July 31, 2014, settlement, it wrote off more than $17,000 of LeFlore's debt.

- 24 -

Green Tree also notes that Bank of America initiated both foreclosure actions and filed the lis pendens, and that LeFlore has not presented any evidence that Green Tree filed any lis pendens against him. When the facts and the reasonable inferences from those facts are construed in Green Tree's favor, LeFlore has failed to establish that no reasonable jury could find for Green Tree.

Green Tree seeks summary judgment dismissing LeFlore's claim against it because he has not shown that it filed a lis pendens or recorded any lien or other instrument against the Property. It also argues that the state statute applies only to claims in which the plaintiff's ownership interest in, rather than the use of, real property is challenged, citing *Niedert*, 200 F.3d at 528. Despite construing the facts and the reasonable inferences therefrom in the light most favorable to LeFlore, he has not presented any facts indicating that Green Tree filed or recorded any instrument which impaired his title. Therefore, Green Tree has established that summary judgment should be granted dismissing LeFlore's slander of title claim.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

LeFlore's motion for summary judgment (ECF No. 24) is **DENIED**;

Green Tree's motion for summary judgment (ECF No. 29) is **GRANTED;**

- 25 -

This action is **TERMINATED** with prejudice; and

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 22nd day of January, 2016.

**BY THE COURT:**

**HON. RUDOLPH T. RANDA**
**U.S. District Judge**